# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND,
### BALTIMORE DIVISION

| | | |
|---|---|---|
| **JAMES C. HOURIHANE,** | * | |
| *Plaintiff*, | * | |
| vs. | * | **Civ. Action No.: 12-cv-2222** |
| **MIDLAND FUNDING, LLC** | * | |
| **and** | * | |
| **SCHLEE & STILLMAN, LLC** | * | |
| **and** | * | |
| **JOHN DOES 1-10,** | * | |
| | * | |
| *Defendants.* | | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes James C. Hourihane, ("Plaintiff"), by and through his attorney, E. David Hoskins and The Law Offices of E. David Hoskins, LLC, and for his Complaint against Defendants, Midland Funding, LLC and Schlee & Stillman, LLC, and John Does 1-10, alleges and states as follows:

## PRELIMINARY STATEMENT

1.    This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* (hereinafter

1

"FDCPA"); the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law, § 14-201, *et seq.* (hereinafter "MCDCA"); and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law, § 13-101, *et seq.* (hereinafter "MCPA").

2.     This lawsuit involves unsupported allegations made by Defendants that James C. Hourihane allegedly incurred and later allegedly defaulted on a debt to "HSBC." This alleged debt will hereinafter be referred to as "the subject debt."

3.     The subject debt is a "debt" as that term is defined by 15 U.S.C. § 1692$a$(5) of the FDCPA, as it allegedly arose out of a credit card account that was used primarily for personal, family, or household purposes.

4.     The subject debt is a "consumer transaction" as that term is defined by Md. Code Ann., Com. Law, § 14-201(c) of the MCDCA.

5.     Defendant attempted to collect the subject debt by engaging in "communications" as defined in 15 U.S.C. § 1692$a$(2) of the FDCPA.

## **JURISDICTION AND VENUE**

6.     Jurisdiction arises under the FDCPA, 15 U.S.C. §1692$k$(d) and 28 U.S.C. § 1331.

7.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

2

8.    Venue lies properly in this District pursuant to 28 U.S.C. § 1391(b), in that the Defendant transacts business in this District and a substantial portion of the acts that give rise to the claim occurred within this District. Additionally, Plaintiff resides within the District of Maryland.

## PARTIES

9.    James C. Hourihane is an individual who was at all relevant times residing in Anne Arundel County, Maryland.

10.    James C. Hourihane is a "consumer" as defined in 15 U.S.C. § 1692$a$(3) of the FDCPA, as he is a natural person improperly sued in the attempt to collect a consumer debt allegedly owed by another consumer. James C. Hourihane is a "person" as that term is defined by the MCDCA and the MCPA.

11.    Defendant, Midland Funding, LLC, ("MFLLC") is a foreign corporation that claims to have purchased a debt owed to "HSBC." At the time of the alleged purchase, the subject debt was alleged to be in default. MFLLC holds an active collection agency license with the State of Maryland, Department of Labor, Licensing and Regulation. MFLLC is regularly engaged, for profit, in the collection of debts allegedly owed by consumers, which it purchases after these debts have gone into default. In

2011, MFLLC retained counsel to file 13,010 lawsuits in the District Court of Maryland.

12.     Defendant Schlee & Stillman, LLC ("SSLLC") is a limited liability company formed under Maryland law that maintains a Maryland office at 9712 Belair Road, Suite 203, Nottingham, Maryland. SSLLC filed its articles of organization on December 5, 2008. After failing to file a property return for 2010, the entity was forfeited on October 3, 2011. Articles of Reinstatement were filed on January 31, 2012.

13.     SSLLC is a law firm engaged in the business of collecting debts alleged to be due another in the State of Maryland, and uses the United States Mail in furtherance of their collection of debts alleged to be due another. SSLLC holds an active collection agency license with the State of Maryland, Department of Labor, Licensing and Regulation.

14.     MFLLC hired SSLLC to collect the subject debt and is vicariously liable for the acts and omissions of SSLLC which at all times relevant to this dispute was the agent of MFLLC acting within the scope of its agency.

15.     At all relevant times Defendants MFLLC and SSLLC acted as a "debt collector" within the meaning of 15 U.S.C. §1692$a$(6) of the FDCPA.

MFLLC is not a creditor of James C. Hourihane, but rather is a debt buyer attempting to collect a consumer debt in default that it alleges is owed by James C. Hourihane. SSLLC regularly collects or attempts to collect, directly or indirectly, debts asserted to be owed or due another.

16.   At all relevant times Defendants MFLLC and SSLLC acted as a "collector" and "person" as those terms are defined by Md. Code Ann., Com. Law, § 14-201(b) of the MCDCA.

17.   The acts of MFLLC and SSLLC alleged herein were performed by its employees and attorney agents acting within the scope of their actual or apparent authority.

18.   The acts of MFLLC and SSLLC alleged herein were performed by their employees acting within the scope of their actual or apparent authority.

19.   At all relevant times each Defendant was the principal, agent, partner, affiliate, successor in interest or predecessor in interest of some or all of the other defendants, and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other defendants so as to be liable for their conduct with respect to the matters alleged below. Each Defendant acted pursuant

to and within the scope of the relationships alleged above, that each defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other defendants.

## **ALLEGATIONS APPLICABLE TO ALL COUNTS**

### **A.   *The District Court of Maryland Process***

20.    The District Court of Maryland was created by an amendment to the Maryland Constitution and came into existence on July 5, 1971. In civil cases the District Court has exclusive jurisdiction in claims for amounts up to $5,000 and concurrent jurisdiction with the circuit courts in claims for amounts above $5,000 but less than $30,000.

21.    The District Court is a statewide court with 34 locations in 12 districts, and a staff including 107 judges. The Court hears disputes relating to landlord tenant matters, civil claims and criminal charges.

22.    The workload of the District Court has seen tremendous growth since its inception in 1971. In its first year, the Court processed just under 800,000 cases; today, more than two million cases are filed annually.

23.    Most debt collection lawsuits are filed in the District Court and, far too often, result in default judgments in favor of the party bringing the

lawsuit when the defendant is unable to afford legal representation and fails to appear and defend the action.

24.  Statistics published for Fiscal Year 2010 show that of the 300,453 total judgments entered, 247,435 (or roughly 82%) were not contested.

25.  The practice and procedures relating to the Maryland District Courts are established in Title 3 of the Maryland Rules.

26.  In the typical collection case, a defendant has fifteen days after being served with the summons and complaint to file a Notice of Intention to Defend explaining why he or she should not be required to pay the money the complaint alleges is owed. If a Notice of Intention to Defend is not filed, a streamlined process exists for obtaining a judgment based upon an affidavit.

27.  Maryland Rule 3-306 governs this process and allows the plaintiff in a collection action to include a demand for judgment on affidavit with the complaint. Under Maryland Rule 1-202(b) the affidavit must be "a written statement, the contents of which are affirmed under the penalties of perjury to be true."

28.  In 2011, Rule 3-306 required that the complaint be supported

by an affidavit, made on personal knowledge, showing that the plaintiff was entitled to judgment as a matter of law. Rule 3-306 also required that the affidavit set forth facts that would be admissible in evidence and show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Finally Rule 3-306 required that the affidavit be accompanied by supporting documents or statements containing sufficient detail as to liability and damages.

29.    Under Maryland Rule 1-311(b), the signature of an attorney on a a complaint constitutes a certification that the attorney has read the complaint and that to the best of the attorney's knowledge, information, and belief there is good ground to support the filing of the complaint.

## B.    *Debt Buyers Lack the Evidence Required by Rule 3-306*

30.    One outgrowth of the global financial crisis has been an increase in the volume of accounts that are sold to debt buyers such as MFLLC. Such sales occur only after the original creditor has made the business decision to sell all right, title and interest in the account, rather than outsource the collection or pursue the collection themselves. Thus, when a debt buyer is involved, the original creditor has already decided that the account is not worth pursuing, which is why the accounts are sold for

8

pennies on the dollar.

31.    Debt buyers frequently lack the documentation to prove the terms and conditions of underlying obligation, and also lack the proof necessary to show the entire chain of assignment of the debt. Once the original creditor sells the account for pennies on the dollar, it does not want to be bothered with it again because it no longer has any financial interest in the account. For this reason, almost every agreement between original creditor and initial debt buyer purchaser (and between the original debt buyer purchaser and each subsequent assignee) is made without representations and warranties, and without recourse.

32.    The debt buyers have adopted a business model, pursuant to which they buy large numbers of charged off consumer accounts for pennies on the dollar and then file lawsuits without first conducting a proper investigation into whether a legal basis exists for pursuing a claim. Under this approach cases are all too often: 1) filed against a person who is not the debtor; 2) filed outside the applicable statute of limitations; and 3) filed in an improper venue.

33.    ████████████████████████████████████████████
███████████████████████████████████████████████████



34.   As a result, firms like SSLLC are given thousands of cases to litigate with a fee structure that results in the lawyers putting very little effort into an extraordinarily high volume of cases. Often, the lawyers are

required to do nothing more than to sign documents prepared by corporate paralegals and then show up in court and hope that the defendant does not appear and that the court will enter a default judgment.

35.   The Court of Appeals of Maryland concluded that the overall lack of proof in debt buyer cases often leads to dubious judgments entered by default, and on September 8, 2011, made major changes to Rule 3-306 to become effective with cases filed after January 1, 2012. In the words of the Hon. Alan Wilner in his report to the Maryland Court of Appeals:

> The problem, which has been well documented by judges, the few attorneys who represent debtors, and the Commissioner of Financial Regulation, is that the [debt buyer] plaintiff often has insufficient reliable documentation regarding the debt or the debtor and, had the debtor challenged the action, he or she would have prevailed. In many instances, when a challenge is presented, the case is dismissed or judgment is denied. In thousands of instances, however, there is no challenge, and judgment is entered by default.

36.   Judge Wilner's observation was validated by the industry itself. Specifically, in a January 19, 2011, letter to the Rules Committee, industry representative ACA International, The Association of Credit and Collection Professionals, stated its concern about the requirement that a debt buyer must provide the court with "a certified or otherwise properly authenticated photocopy of original of certain documentation establishing proof the

11

consumer debt at issue existed."

37.     The reason the industry opposed the requirement of "proof the consumer debt at issue existed" is because, in their own words:

> The above documentation is often unattainable for a variety of reasons, the most important of which is that the original creditor no longer has the information or did not have it when selling an account or turning the account over for collection. Particularly in the context of credit cards, financial institutions are not required under federal law to maintain this type of information beyond two years.

38.     The argument presented by the industry was, in essence, that (1) because the original creditors do not have the documentation; and (2) because federal law does not require that the original creditors keep their records; therefore (3) the debt buyer industry should not be required to comply with the same rules of evidence that govern disputes of every other litigant who comes before the Court. No other type of plaintiff can successfully sue for breach of contract without offering any proof of the terms and conditions of the contract. Yet, this is precisely what is attempted every day by debt buyers, such as MFLLC and their attorneys.

39.     The amendments to Rule 3-306 that apply to new complaints filed after January 1, 2012, clarified the evidentiary requirements that a debt buyer must meet when seeking a judgment on affidavit.

a.     The debt buyer must prove the existence of the debt by a certified or otherwise properly authenticated photocopy or original of at least one of the following: (A) a document signed by the defendant evidencing the debt or the opening of the account; (B) a bill or other record reflecting purchases, payments, or other actual use of a credit card or account by the defendant; or (C) an electronic printout or other documentation from the original creditor establishing the existence of the account and showing purchases, payments, or other actual use of a credit card or account by the defendant.

b.     The debt buyer must prove the terms and conditions to which the consumer debt was subject, by producing a certified or otherwise properly authenticated photocopy or original of the document actually applicable to the consumer debt at issue.

c.     The debt buyer must prove that it owns the consumer debt at issue by providing a chronological listing of the names of all prior owners of the debt and the date of each transfer of ownership of the debt, beginning with the name of the original creditor; and a certified or other properly authenticated copy of the bill of sale or other document that transferred ownership of the debt to each successive owner.

d.    The debt buyer must identify the nature of the debt or account by including in the affidavit the following information: (A) the name of the original creditor; (B) the full name of the defendant as it appears on the original account; (C) the last four digits of the social security number for the defendant appearing on the original account, if known; (D) the last four digits of the original account number; and (E) the nature of the consumer transaction, such as utility, credit card, consumer loan, retail installment sales agreement, service, or future services.

e.    The debt buyer must provide information relating to any charge-off of the account and an itemization of all money claimed by the debt buyer.

40.    Proof of these items has always been required to obtain a judgment. The amendment was put in place to provide an evidentiary checklist for practitioners and judges and provide protection to debtors who do not challenge or defend the claims from having a judgment entered by default that is not supported by legally sufficient evidence establishing the plaintiff's entitlement to relief and damages.

### C. *Defendants Attempt to Collect a Debt by Filing a Frivolous Lawsuit against James C. Hourihane in the District Court of Maryland*

41.    Sometime before December 11, 2011, MFLLC hired SSLLC to collect an alleged consumer debt from Plaintiff James C. Hourihane. This debt regarded an alleged account with "HSBC" with an account number ending in "9252." MFLLC alleged that it had been assigned this debt.

42.    MFLLC directed SSLLC to collect the alleged debt by filing litigation in the District Court of Maryland for Anne Arundel County against Plaintiff James C. Hourihane.

43.    On or about December 11, 2011, SSLLC, on behalf of MFLLC filed a complaint seeking a judgment in the amount of $1,351.78 against James C. Hourihane for allegedly failing to pay a debt owed to "HSBC." At the time the lawsuit was filed, SSLLC was not in good standing and not authorized to conduct business in Maryland. On the same day, SSLLC filed 201 other collection lawsuits in the various District Courts of Maryland.

44.    In support of the claim, SSLLC and MFLLC filed an "Affidavit of Kay Ostmoe," **Exhibit 1**, and a "Bill of Sale," **Exhibit 2**.

45.    The Affidavit of Kay Ostmoe failed to provide the information currently needed to comply with the requirements of Rule 3-306.

15

a.  The affidavit did not assert that Kay Ostmoe had personal knowledge about HSBC or the debt. Rather, the only personal knowledge asserted was personal knowledge of the account records of Midland Credit Management:

> I am employed as a Legal Specialist and have access to pertinent account records for Midland Credit Management, Inc. ("MCM"), servicer of this account on behalf of plaintiff. I am a competent person over eighteen years of age, and make the statements herein based upon personal knowledge of those account records maintained on plaintiff's behalf.

*See* **Exhibit 1**, ¶ 1.

b.  Since the affidavit was not based upon personal knowledge of the business records of HSBC it failed to present admissible evidence that (1) James C. Hourihane was legally obligated to pay the alleged debt to HSBC; (2) that the alleged debt had not been paid, and (3) the amount, if any, still owed on the alleged debt.

c.  Kay Ostmoe failed to state under the penalties of perjury that the statements in the affidavit were true. Rather, she included the improper qualification that the "statements are true and correct to the best of my knowledge."

46.  The "Bill of Sale" attached to the Complaint purported to

16

establish ownership of the subject debt by MFLLC. This document was legally insufficient because the Bill of Sale relates to a transaction between "Atlantic Credit & Finance Special Finance Unit III, LLC" and MFLLC and makes no mention of the HSBC account referenced in the Affidavit of Kay Ostmoe and fails to demonstrate that MFLLC has any ownership of the debt alleged to be owed by James C. Hourihane to HSBC. The document also fails to establish that the account allegedly relating to James C. Hourihane was included in the accounts sold by Atlantic Credit & Finance Special Finance Unit III, LLC to MFLLC.

47.    Based on this flimsy documentation, MFLLC and SSLLC asserted that MFLLC was the assignee of an HSBC account and sued James C. Hourihane.

48.    The defects in the Complaint and supporting documents were obvious and readily discoverable to the point that no reasonable attorney that read the complaint before signing it would conclude that good legal and factual grounds existed to file a claim against James C. Hourihane on behalf of MFLLC. The Complaint and supporting documents were so glaringly defective that they could not be filed in good faith.

49.    Plaintiff James C. Hourihane was served with a copy of the

Complaint on January 23, 2012. Immediately thereafter, Plaintiff telephoned SSLLC and spoke with a debt collector at the firm. Plaintiff explained that he did not owe any money to HSBC. The debt collector asked James C. Hourihane to provide the last four digits of his social security number, which he did. At this point, the debt collector stated "it doesn't match," and thus admitted that MFLLC and SSLLC had sued the wrong person. The debt collector ended the call by saying "good luck."

50.    Despite this actual knowledge, MFLLC and SSLLC continued to prosecute the lawsuit.

51.    Plaintiff James C. Hourihane retained counsel, and appeared at trial on July 3, 2012. After the case was called, judgment was entered in favor of James C. Hourihane and against MFLLC.

### D.    *Plaintiff Suffered Actual Damages*

52.    The conduct and actions of MFLLC and SSLLC caused inconvenience, emotional distress, loss of sleep, embarrassment and humiliation to James C. Hourihane. Mr. Hourihane has been diagnosed with angina and is required to carry nitro-glycerin tablets for emergency use. Prior to the incidents alleged herein, Mr. Hourihane had not had to use the nitro-glycerin tablets for over two years. The stress caused by the

Defendants' illegal debt collecting activities resulted in the Plaintiff suffering two angina incidents that were so severe that he had to take a nitro-glycerin tablet.

## COUNT I

### Violation of the Fair Debt Collection Practices Act
### 15 USC 1692, *et. seq.*

53.   James C. Hourihane hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

54.   As alleged above, in its attempts to collect the aforementioned alleged debt, MFLLC and SSLLC violated the FDCPA by using false, deceptive, or misleading representations or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692*e*. In the complaint filed against James C. Hourihane in the District Court of Maryland, Defendants falsely represented the character of the alleged debt in violation of 15 U.S.C. § 1692*e*(2)(A) by asserting that the debt was for a "HSBC" account, when MFLLC and SSLLC knew, or should have known, that they lacked legally sufficient proof that James C. Hourihane owed any such obligation. MFLLC also falsely represented that it was entitled to pursue a claim against James C. Hourihane when it knew or should have known that it did not possess

19

the evidence necessary to establish ownership of the alleged debt.

55.   In the complaint filed against James C. Hourihane in the District Court of Maryland, MFLLC and SSLLC used deceptive means to attempt to collect a debt in violation of 15 U.S.C. § 1692*e*(10) by attempting to obtain a judgment using inadmissible evidence that failed to establish a legally sufficient entitlement to relief.

56.   In the complaint filed against James C. Hourihane in the District Court of Maryland, MFLLC and SSLLC used unfair and unconscionable means to attempt to collect a debt in violation of 15 U.S.C. § 1692*f* by asserting that the debt was for a "HSBC" account, when MFLLC and SSLLC knew, or should have known, that they lacked legally sufficient proof that James C. Hourihane owed the alleged debt and that MFLLC owned the account.

57.   In the complaint filed against James C. Hourihane in the District Court of Maryland, MFLLC and SSLLC used unfair and unconscionable means to attempt to collect a debt in violation of 15 U.S.C. § 1692*f* by continuing to litigate the case despite having direct knowledge that they had sued the wrong person.

58.   As a direct consequence of the acts, practices and conduct of

MFLLC and SSLLC, James C. Hourihane suffered inconvenience, emotional distress, loss of sleep, embarrassment and humiliation.

## COUNT II

### Violation of the Maryland Consumer Debt Collection Act
### Md. Code Ann., Com. Law, § 14-201, *et seq.*

59. James C. Hourihane hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

60. The alleged debt at issue in this dispute was a debt which was primarily for personal, family, or household purposes and is therefore a "consumer transaction" as that term is defined by the MCDCA.

61. In the complaint filed against James C. Hourihane in the District Court of Maryland, MFLLC and SSLLC attempted to enforce a right with knowledge that the right did not exist in violation of Md. Code Ann., Com. Law. §14-201(8) by asserting that the debt was for a "HSBC" account when MFLLC and SSLLC knew, or should have known, that they lacked legally sufficient proof that James C. Hourihane owed the alleged debt and that MFLLC owned the account.

62. In the complaint filed against James C. Hourihane in the District Court of Maryland, MFLLC and SSLLC attempted to enforce a right

with knowledge that the right did not exist in violation of Md. Code Ann., Com. Law. §14-201(8) by attempting to obtain a judgment based upon inadmissible evidence that failed to establish a legally sufficient entitlement to relief.

63.     As a direct consequence of the violations of the MCDCA by MFLLC and SSLLC, James C. Hourihane has suffered inconvenience, emotional distress, loss of sleep, embarrassment and humiliation and is therefore entitled to actual damages pursuant to Maryland Code Annotated, Commercial Law §14-203 from MFLLC and SSLLC.

## COUNT III

### Violation of the Maryland Consumer Protection Act
### Md. Code Ann., Com. Law, § 13-101, *et seq.*

64.     James C. Hourihane hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

65.     James C. Hourihane is a consumer as defined by the Consumer Protection Act ("CPA"), Maryland Code Annotated, Commercial Law § 13-101(c).

66.     Section 13-303 of the CPA prohibits unfair or deceptive trade practices in the sale of consumer goods and the extension of consumer

credit.

67.    Under the CPA, unfair or deceptive practices also include any violation of the MCDCA.

68.    As a direct consequence of Defendant's violation of the CPA, James C. Hourihane has suffered an injury or loss including inconvenience, emotional distress, loss of sleep, embarrassment and humiliation and is entitled to actual damages and attorneys fees pursuant to CPA §13-408.

WHEREFORE, Plaintiff, James C. Hourihane, respectfully prays for a judgment against Defendants, jointly and severally, as follows:

a.    Actual damages pursuant to 15 U.S.C. § 1692$k$(a)(1); Md. Code. Ann., Com. Law. §14-203; and Md. Code Ann., Com. Law §13-408 in the amount of $75,000.00;

b.    Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692$k$(a)(2)(A);

c.    Costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692$k$(a)(3) and Md. Code Ann., Com. Law §13-408; and

d.    For such other and further relief as may be just and proper.

## **JURY DEMAND**

Pursuant to Rule of Civil Procedure 38, James C. Hourihane hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should he prevail on any of his claims in this action.

Date: July 26, 2012                          Respectfully Submitted,


_____*/s/ E. David Hoskins*___
E. David Hoskins, Bar No. 06705
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
Quadrangle Building at Cross Keys
2 Hamill Road, Ste. 362
Baltimore, Maryland 21210
(410) 662-6500 (Tel.)
dhoskins@hoskinslaw.com